IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM G. MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **2:11-cv-3845-AKK** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff William G. McAllister ("McAllister") brings this action pursuant to section 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

**I.  Procedural History**

McAllister filed his application for Title XVI Supplemental Security Income

("SSI") on August 26, 2008, alleging a disability onset date of May 10, 2007, due to a severe head injury he sustained in an accident on January 14, 1988. (R. 96, 140). After the SSA denied his application on October 31, 2008, (R. 64-68), McAllister requested a hearing on November 24, 2008, (R. 71), which he received on April 13, 2010, (R. 30-61). At the time of the hearing, McAllister was 52 years old with a high school education, and his past relevant work included working as a carpet cleaner. (R. 25, 144, 163). McAllister had not engaged in substantial gainful activity since August 26, 2008, the date of his application. (R. 20).

The ALJ denied McAllister's claims on May 10, 2010, (R. 15-28), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 8, 2011, (R. 1-6). McAllister then filed this action on November 7, 2011, pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

  (1)   whether the claimant is currently unemployed;

  (2)   whether the claimant has a severe impairment;

  (3)   whether the impairment meets or equals one listed by the Secretary;

  (4)   whether the claimant is unable to perform his or her past work; and

  (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether McAllister is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, the ALJ initially determined that McAllister had not engaged in substantial gainful activity since the date of his application, and therefore met Step One.  (R. 20).  Next, the ALJ found that McAllister suffered from the severe impairments of  "cognitive disorder and status post closed head injury." *Id.*  The ALJ then proceeded to the next step and found that McAllister failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 20).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that:

> [T]he claimant has no impairment-related exertional limitations, but has ... non-exertional limitations ... The claimant can learn and remember simple work routines with practice, and can understand and remember simple instructions but not detailed ones.  He could carry out simple instructions and sustain attention to simple, familiar tasks for extended periods.  Claimant would benefit from a flexible schedule and would be expected to miss one to two days of work per

month. He would benefit from casual supervision and would function best with his own work area apart from others. Claimant could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. He would benefit from regular rest breaks and a slowed pace but will still be able to maintain a work pace consistent with the mental demands of competitive level work. Contact with the public should be casual and feedback should be supportive. Criticism should be tactful and non-confrontational. Contact with co-workers should also be casual. Claimant would be expected to have occasional conflict with co-workers. He could adapt to infrequent, well explained changes. Claimant would need help with long term planning and goal setting but would be able to manage short-term planning on his own.

(R. 22). Moreover, in light of the "non-extertional limitations" residual functional capacity ("RFC"), the ALJ determined that McAllister is "unable to perform any past relevant work." (R. 25). Lastly, in Step Five, the ALJ considered McAllister's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 25). Because the ALJ answered Step Five in the negative, the ALJ found that McAllister "has not been under a disability, as defined in the Social Security Act, from August 26, 2008, the date the application was filed." (R. 26). *See also McDaniel*, 800 F.2d at 1030.

## V. Analysis

The court turns now to McAllister's contentions that the ALJ (1) failed to

develop the record by obtaining a medical source opinion ("MSO") from a medical expert or by re-contacting the consultative physician for clarification of the medical report, (2) failed to generate the physical RFC at the initial level, and (3) failed to meet his burden to establish other work that McAllister could perform by not considering McAllister's limitations to include sheltered workshop or supervised work rather than competitive work.  *See* doc. 7, at 5-10.  The court addresses each contention in turn.

    A.    <u>Alleged failure to develop the record with MSO by medical expert or by re-contacting consulting physician</u>

McAllister contends that the ALJ's RFC findings were not based on substantial evidence since the ALJ purportedly failed to fully develop the record by obtaining an MSO from a medical expert to examine or review the record or "by contacting the consultive physician for clarification." Doc. 7 at 5-8.  The court disagrees.

    *i. Alleged failure to obtain medical expert testimony*

While an ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the ALJ is not obligated to automatically obtain testimony from a medical expert.  Rather, the ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning whether ...[a

claimant's] impairment(s) could reasonably be expected to produce [his or her] alleged symptoms." 20 C.F.R. § 404.1529 (emphasis added).  Critically, the ALJ is not required to order additional medical opinion when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).  Indeed, the ALJ considered McAllister's entire medical record available, which was admittedly sparse since McAllister last sought treatment for his 1988 injury in 1990, to reach a finding that McAllister is not disabled. Specifically, the record shows that two doctors examined McAllister, including Malaika Hakima, M.D. on September 23, 2008, (R. 176-178), and Sally Gordon, Ph.D., a licensed psychologist, on September 22, 2008, (R. 181-184).  As it relates to Dr. Hakima, the ALJ noted that Dr. Hakima reported that McAllister "had normal grip strength," his "gait was completely normal [and] there was no shuffling or wobbling," and diagnosed McAllister with "kyphosis, history of mental impairment, and history of head trauma." (R. 24).  Based on Dr. Hakima's report, the ALJ noted that "Kyphosis was present but [McAllister] had full range of motion in all joints." *Id*.

After reviewing Dr. Hakima's report, the ALJ turned next to the psychological findings and noted that "[a]s far as [McAllister's] cognitive

disorder, the objective medical evidence does not support deficits that would preclude work activity on a regular and sustained basis." (R. 24). The ALJ went on to note that "[i]n a further attempt to develop a medical record that is nearly non-existent due to the claimant's failure to have sought treatment since 1990, the State agency arranged for a consultative psychological examination of the claimant, which was performed by Sally Gordon, Ph.D." (R. 24). The ALJ added that

> Dr. Gordon noted that [McAllister] drove himself to the examination, and that he had reported an MVA in 1988, a subsequent return to independent living following a year of convalescence, a history of marijuana and cocaine use and two driving-under-the-influence charges.  Dr. Gordon noted...no deficits of attention or concentration, ...normal receptive and expressive language skills, a normal (euthymic) mood, and no difficulty comprehending test questions and instructions. [McAllister] was alert and oriented in all spheres, had average working memory, judgment and intelligence, denied any mental health treatment or psychological disturbances, and reported no problems with sleep or appetite.  Dr. Gordon diagnosed a cognitive disorder, NOS, alcohol abuse/polysubstance abuse in full remission, and a global assessment of functioning of 70, which indicated only mild symptoms.

(R. 24).  Consequently, as related to McAllister's cognitive disorder, the ALJ found that "there is no objective evidence to support a level of impairment that would prevent [McAllister] from performing work activity.  He has no significant deficits in concentration, persistence, or pace.  His overall working memory fell

within the average range, as did his judgment and cognitive function." (R. 25).

Based on the reports of Drs. Hakima and Gordon, the ALJ held that "[o]verall, the objective medical evidence demonstrated the absence of any significant physical limitations that would preclude all work activity or that would limit the claimant to an extent greater than has been determined herein." (R. 24). In reaching this finding, the ALJ noted that McAllister "had worked full time many years subsequent to his alleged closed head injury," and "has functioned without significant deficits ... including performing odd jobs such as painting and cutting grass for payment." *Id*. In short, there was nothing in the record to support McAllister's disability contention. In fact, McAllister's work history suggested otherwise. Based on this court's review of the record, the findings the ALJ made concerning his evaluation of the two medical reports are sufficiently extensive for the ALJ to make a RFC determination and to find that McAllister was not disabled. Accordingly, the ALJ committed no error by failing to obtain a medical expert's opinion.

    *ii. Alleged failure to re-contact Dr. Hakima for clarification of the medical report*

Alternatively, McAllister contends that "the ALJ should have considered developing the record to obtain an MSO by contacting the consultative physician

[Dr. Hakima] for clarification." Doc. 7 at 8. Unfortunately for McAllister, the ALJ is only obligated to obtain a clarification when a consultative physician's report is "inadequate or incomplete" such that the ALJ cannot make an informed decision regarding whether a claimant is disabled. *See Davison v. Astrue*, 370 Fed.App'x 995, 997 (11th Cir. 2010); *Vesty v. Astrue*, 353 Fed.App'x 219, 225 (11th Cir. 2009); 20 C.F.R. § 416.919p(a)-(b). In such a case, the ALJ must attempt to develop the record further by contacting the treating physician to determine whether the required information is available. *See id.*

Here, Dr. Hakima's report was sufficiently complete for the ALJ to determine, with the other evidence in the record, that McAllister was not disabled.[1] Specifically, Dr. Hakima determined McAllister's chief complaints ("1. Balance and equilibrium problem. 2. Memory impairment"), reviewed McAllister's history of present illness ("[i]n 1988 he had a motor vehicle accident" resulting in "severe head trauma"), reviewed the impact the illness had on McAllister's activities of

---

[1] A complete consultative examination report includes the following: (1) the claimant's major or chief complaints; (2) a detailed description of the claimant's history of the major complaints; (3) a description of pertinent positive and negative detailed findings based on the history, examination, and lab tests related to the major complaints and any other abnormalities or lack thereof found during the exam or lab tests; (4) the results of the lab tests; (5) the diagnosis and prognosis for the claimant's impairment; (6) a statement about what the claimant can still do despite the impairments; and (7) an explanation or comment by the medical source on the claimant's major complaints. *Davison*, 370 F. App'x at 997-98 (citing 20 C.F.R. §§ 416.919n(c)(1)-(7) and 416.919p(b)).

daily living, conducted a physical examination, and diagnosed McAllister. (R.176). There was simply nothing for the ALJ to clarify or further develop.

In the final analysis, ultimately, McAllister has the burden of proving that he is disabled. *See* 20 C.F.R. § 416.912(c). McAllister failed to show how the record was incomplete and what, if any, information was missing. Moreover, McAllister failed to show how re-contacting Dr. Hakima or obtaining medical expert testimony would have aided the ALJ to make an informed decision, and how the purported failure to develop the record prejudiced him. Therefore, the substantial evidence supports the ALJ's RFC determination.

*iii. Alleged failure to generate a physical RFC at the initial level*

McAllister contends next that "no physical RFC was generated at the initial level" and that only a "non M.D." prepared a physical summary of McAllister. Doc. 7 at 6; (R. 185). While there is no record that McAllister had a physical RFC assessment, he did have a mental RFC assessment, (R. 200-203), which is consistent with his alleged complaints resulting from a head injury. Regarding McAllister's physical ability, the record contained Dr. Hakima's physical examination and summary of McAllister, (R. 176-178), which the ALJ used to generate McAllister's RFC, noting that the "claimant has no impairment-related exertional limitations." (R. 22). As the ALJ pointed out, although "[s]pinal

Kyphosis was noted by the consultative examiner[, it] was not found to impose any functional limitations." (R. 22).   Indeed, Dr. Hakima reported that McAllister "does his own bathing, dressing, feeding, and grooming," "does housework," and sat comfortably during the exam and had no problems getting on and off of the exam table.  (R. 176 - 177).  Moreover, she reported that McAllister could squat and rise to a standing position without problems and that he could heel-to-toe walk, had a normal gait, and did not exhibit unsteadiness, shuffling or wobbling. (R. 177).  In other words, nothing in the record suggests that McAllister has any "impairment-related exertional limitations."  Consequently, the substantial evidence supports the ALJ's RFC determination and conclusion that McAllister had no substantial physical impairments.

    *iv. Alleged failure to consider Medical Vocational Guidelines - 201.12*

McAllister also argues that the ALJ should have determined that he met the criteria for Medical Vocational Guideline Rule 201.12 under from Appendix 2 to Subpart  P of 20 C.F.R. Part 404, Table No. 1 - Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s) which would qualify McAllister for a mandatory finding of disabled.  However, this argument is not supported by the evidence.  The Medical–Vocational Guidelines ("grids") direct a finding in a

particular social security disability benefits case only when there is an exact fit between the criteria of the grids and the situation before the ALJ. *Perbeck v. Astrue*, 487 F. Supp. 2d 1267, 1272 (D. Kan. 2007). Here, there was nothing in the ALJ's opinion or the evidence limiting McAllister to sedentary work. To the contrary, the ALJ opined that McAllister had "no impairment-related exertional limitations." (R. 22). Further, the ALJ determined that McAllister could paint, cut grass, clean around the house, drive, and walk with no problems. (R. 20-25). These findings and the medical record belie McAllister's contention that the ALJ erred by failing to limit him to sedentary work. In short, because McAllister had cognitive impairments as a result of his head injury rather than physical impairments, (R. 22), Medical Vocational Guideline Rule 201.12 under Table No. 1 - Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s), did not apply to McAllister.

>   B.  <u>Alleged failure to limit McAllister's possible jobs to sheltered workshop or supervised work</u>

Finally, McAllister argues that his RFC dictated a sheltered workshop or supervised work setting rather than competitive employment. Doc. 7 at 8. As such, McAllister contends that the vocational expert failed to provide other jobs in the national economy sufficient to meet the Commissioner's burden. Generally,

"[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  The ALJ, in fact, did so in McAllister's case.  Specifically, the ALJ established a hypothetical where the individual could "learn and remember simple work routines with practice, could understand and remember simple instructions, but not detailed ones" and could "tolerate ordinary work pressures, but should avoid excessive work loads, quick decision-making, rapid changes and multiple demands and would benefit from regular rest breaks and a slowed pace, but would still be able to maintain a workplace consistent with the mental demands of competitive level work."  (R. 53).

    Based on these limitations, when the ALJ asked if there are any occupations that an individual with the same age, education, and work experience as McAllister could do, the vocational expert testified "First, as a general comment, that the limitations described in this exhibit sound more like sheltered workshop or supervised work than competitive employment."  (R. 54).  Nonetheless, the vocational expert stated that "there are numerous jobs in [that] setting" and that "the design of all these sheltered jobs are to lead to competitive work." *Id*.  Then, using the ALJ's hypothetical, the vocational expert detailed a significant number

of jobs that exist in the national economy consistent with the limitations stated, including fast food worker, cleaner/housekeeper, and sorter. (R. 54-56). To clarify the vocational expert's testimony, the ALJ asked, "Now was it your testimony that an individual with the abilities and limitations set forth in Exhibit C5-F, page 3 would be able to perform these jobs?" (R. 55). The vocational expert responded that he "narrowed the total number [] of jobs in the state of Alabama, so the limited range of jobs that [he] cited, yes, would be" and that considering McAllister's limitations, including his "memory being poor" and inability to endure an "eight-hour-a-day" work schedule, he determined that McAllister could still work at the "light" and "unskilled" levels, which would be less than the full range of the competitive jobs. (R. 55-56). Specifically, the vocational expert stated that the limited range of jobs in Alabama is 4,300 for fast food workers, 1,400 for cleaners/housekeepers, and 1,200 for sorters, compared nationally to 250,000, 65,000, and 70,000 available jobs, respectively. (R. 54-55).

  Put simply, the ALJ's hypothetical and the vocational expert's explanation reveal that the vocational expert considered the non-exertional limitations at issue, as well as limitations that "sound[ed]" more like sheltered workshop or supervised work, and determined that jobs still exist that McAllister could perform. Thus, pursuant to *Wilson*, 284 F.3d at 1227, the substantial evidence supports the

vocational expert's testimony and the ALJ's finding that McAllister is not disabled.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that McAllister is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 19th day of September, 2012.

_____
       **ABDUL K. KALLON**
    UNITED STATES DISTRICT JUDGE